**STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR
MARQUETTE COUNTY**

**ABRIELLE LONDO,**

       **Plaintiff,**

v.

**ENRIGHT FAMILY RESTAURANTS,
D/B/A BIG BOY, and STEVE WHELAN,
Individually.**

       **Defendants.**

---

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Now Comes Plaintiff, Abrielle Londo, by and through her attorney, Hanshaw Burink, PLC, and hereby states as follows:

1. Plaintiff is a resident of the County of Marquette, State of Michigan.

2. Defendant conducts business in the County of Marquette, State of Michigan.

3. This is a complaint to enforce Plaintiff's rights under the Family and Medical Leave Act and the Michigan Elliott-Larsen Civil Rights Act.

4. Jurisdiction is proper in this court as the events giving rise to the cause of action occurred in Marquette County and Plaintiff's damages exceed $25,000.

## STATEMENT OF FACTS

5. Plaintiff began working for Defendant on or about in 2017. Her position at all relevant times was that of a server.

1

6. Plaintiff performed her job in a diligent and skillful manner.

7. During her employment, Plaintiff was subjected to a sexually hostile work environment.

8. A cook working at Defendant at that time grabbed Plaintiff's butt without her consent.

9. Another employee would grab his penis and try to rub up against Plaintiff.

10. The conduct by the employees above was unwelcome and made Plaintiff uncomfortable.

11. She reported the instances to Defendants. However, Defendants failed to take any steps to stop the sexual harassment.

12. She frequently was subjected to sexual conversations that made her feel uncomfortable. Whelan would also take part in the sexual conversations.

13. At all pertinent times, Plaintiff's supervisor was Defendant Steve Whelan ("Whelan").

14. Plaintiff and Whelan formed a friendship, but Whelan wanted more.

15. Indeed, Whelan would frequently make sexual advances towards Plaintiff.

16. Whelan's sexual advances were consistent and pervasive. He also kissed Plaintiff, making her feel uncomfortable.

17. Plaintiff was not interested in a sexual or romantic relationship with him.

18. When Plaintiff refused Whelan's sexual advances, he began treating her poorly.

19. By way of example, Whelan reduced the number of tables Plaintiff was assigned per shift. Instead of the usual four or five, she only had two tables. This reduced the amount of money she was earning.

20. In addition, Whelan singled her out and would consistently swear at her, call her a drama queen and placed her under greater scrutiny.

21. Whelan's behavior created a hostile work environment and caused undue stress on Plaintiff.

22. In or about January 2019, Plaintiff complained to Whelan, her direct supervisor, that she felt he was singling her out and treating poorly.

23. In response to her complaint, Whelan immediately changed Plaintiff's schedule that was previously posted, and removed her from any shift.

24. The stress caused by Whelan's behavior and the hostile work environment culminated in Plaintiff's medical doctor opining that she needed to take a leave of absence.

25. Plaintiff notified Defendant on or about January 7, 2019   that she would be taking a leave of absence.

26. The leave of absence qualified for eave under the Family and Medical Leave Act.

27. Plaintiff was to remain off work until February 21, 2019.

28. On or about February 17, 2019, Plaintiff had a meeting with Whelan to discuss her return to work and find out what her schedule would be.

29. During that meeting, Whelan informed Plaintiff that she would not be returning to work and he terminated her.

30. Whelan concocted a bogus reason to terminate her by stating customers complained about her.

31. Plaintiff was terminated on February 17, 2019.

32. Plaintiff's termination was due to her exercising her right to take leave under the FMLA.

33. Her termination was also due to her refusal to succumb to Whelan's sexual advances and her complaints to him about his behavior and that of other employees.

34. As a result of Defendants' actions, Plaintiff has suffered damages by way of lost income, emotional distress, attorney fees, and more.

### Count I—Violation of the Michigan Elliott-Larsen Civil Rights Act For Sexual Harassment Quid Pro Quo against Defendants

35. Plaintiff hereby incorporates the preceding paragraphs.

36. Plaintiff is an employee and Defendants are her employer, as defined by the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

37. While employed, Whelan made sexual advances towards Plaintiff, the submission of which was made a term or condition of her employment.

38. Plaintiff's rejection of the sexual advances was used as a factor in changing the terms and conditions of Plaintiff's employment.

39. Plaintiff rejected the sexual advances and her shifts were changed, she was provided with fewer tables and in turn made less money and was ultimately terminated from her position.

40. As a result of Defendants' unlawful conduct as described above, Plaintiff has sustained damages by way of lost income, loss of future income, emotional distress damages, humiliation, and attorney fees and costs.

## Count II—Violation of the Elliott-Larsen Civil Rights Act
## For Sexual Harassment-Hostile Work Environment against
## Defendants

41. Plaintiff hereby incorporates the preceding paragraphs.

42. Plaintiff is an employee and Defendants are her employer, as defined by the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

43. Plaintiff belongs to a protected group, as defined by the Act.

44. During her employment, she was subjected to conduct or communication that was of a sexual nature.

45. The conduct and communication was unwelcome.

46. Defendants' conduct was both objectively and subjectively offensive.

47. Defendants' failure to take prompt, remedial action to concerning the hostile environment Plaintiff was made to endure had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile and offensive employment environment.

48. The unwelcome sexual conduct or communication was intended to or did substantially interfere with Plaintiff's employment and it created an intimidating, hostile, or offensive work environment.

49. Defendants were aware of the harassment as Plaintiff had reported it to Whelan.

50. As a result of Defendants' unlawful conduct as described above, Plaintiff has sustained damages by way of lost income, loss of future income, emotional distress damages, humiliation, and attorney fees and costs.

## **Count III—Violation of the Elliott-Larsen Civil Rights Act<br>For Retaliation Against Defendants**

51. Plaintiff hereby incorporates by reference the preceding paragraphs.

52. Plaintiff engaged in protected activity and objected to the sexual harassment taken against her.

53. Beginning shortly after her initial complaint about the sexual harassment and continuing until her termination from her position, Plaintiff was subjected to retaliation, which includes retaliatory hostile work environment, unfavorable work assignments, removal from schedule and termination of employment.

54. Defendant failed to effectively remedy the situation and instead terminated her.

55. The sexual harassment and hostile work environment of Defendants, as more particularly alleged, supra, violated Plaintiff's rights against retaliation under ELCRA, which retaliation is explicitly prohibited for opposing what she reasonably believed to be retaliation for making her complaints of sexual harassment hostile work environment and for the quid pro quo sexual harassment.

56. Defendants' offensive conduct and its refusal to provide a remedy to the Plaintiff and its retaliation actions were willful, deliberate and intentional.

57. The injuries to Plaintiff that arose as a consequence of Defendants' conduct was foreseeable and intentionally caused by the Defendant.

58. Defendant retaliated against Plaintiff by terminating her from her position.

59. Plaintiff's protected activity was a significant factor in Defendants' decision to terminate her from her employment.

60. The retaliation and discharge would not have occurred had Plaintiff not engaged in protected activity pursuant to ELCRA.

61. As a direct and proximate result of Defendants' violation of LECRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, fright, shock, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

## Count IV—Violation of the Family and Medical Leave Act for Interference Against Defendant Enright

62. Plaintiff incorporates by referenced the preceding paragraphs.
63. Defendant qualifies as an "employer" as that term is defined by the FMLA, 29 U.S.C. § 2611(4) and that Plaintiff is an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2).
64. Plaintiff suffered from a serious health condition that rendered her unable to work.
65. Plaintiff applied for and was granted FMLA leave, to be taken from January 7 through February 21, 2019.
66. Defendant granted Plaintiff the leave.
67. However, Defendant refused to restore Plaintiff to her position upon her ability to return after her federally-protected leave, thereby interfering with her rights under the FMLA.
68. Defendant's actions were willful and intentional disregard for Plaintiff's rights.
69. As a result of Defendant's unlawful actions, Plaintiff suffers and continues to suffer, lost wages, future wages, attorney fees and medical expenses, all within the meaning of the FMLA 29 U.S.C. § 2617(a), in an amount to be proved at trial, but believed to be greater than $75,000. These damages include attorney fees and liquidated damages for Defendant's violation.

## COUNT VI—VIOLATION OF FMLA FOR DISCRIMINATING AGAINST AND/OR RETALIATING AGAINST PLAINTIFF FOR EXERCISING AN FMLA RIGHT

70. Plaintiff hereby incorporates by reference the preceding paragraphs.

71. Defendant qualifies as an "employer" as that term is defined by the FMLA, 29 U.S.C. § 2611(4) and that Plaintiff is an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2).

72. Plaintiff's FMLA leave was a factor in Defendant's decision to terminate her.

73. Defendant discriminated and/or retaliated against Plaintiff for utilizing leave under the Family and Medical Leave Act by terminating her.

74. Defendant's actions were willful and intentional disregard of Plaintiff's rights.

75. As a result of Defendant's unlawful actions, Plaintiff has sustained lost wages, loss of future wages, attorney fees, and emotional distress damages.

Wherefore, Plaintiff requests that this Court compensate Plaintiff for all damages sustained as a result of Defendant's unlawful actions, including:

a. Lost wages from her termination until present;

b. Lost wages for the time Plaintiff was employed but not provided a schedule or tables;

c. Future wages;

d. Emotional distress damages;

e. Liquidated damages;

f. Punitive damages; and

g. Attorney fees and costs.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: 5/4/20                                           s/ Sandra Hanshaw Burink

                                                  Sandra Hanshaw Burink (P68619)
                                                  Attorney for Plaintiff
                                                  shburink@hb-lawoffices.com