UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| ABRIELLE LONDO, | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:20-cv-53 |
| -v- | ) | |
| | ) | Honorable Paul L. Maloney |
| ENRIGHT FAMILY RESTAURANTS | ) | |
| and STEVEN WHELAN, | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Abrielle Londo worked as a server at a restaurant operated by Defendant Enright Family Restaurants. Defendant Steven Whelan supervised Plaintiff. Plaintiff alleges she was subjected to a sexually hostile work environment. She also alleges that Whelan made frequent sexual advances toward her and that he retaliated when she refused his advances. In January 2019, Plaintiff notified Defendant that she needed a leave of absence. In mid-February, Plaintiff met with Whelan to discuss returning to work. Whelen then informed Plaintiff that she was terminated. Plaintiff sued, asserting claims under the Family and Medical Leave Act and Michigan's Elliott Larson Civil Rights Act.

Defendants filed a motion for summary judgment. (ECF No. 31.) The Court will grant the motion in part and will deny the motion in part.

I.

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Crop. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).

When faced with a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

II.

In Counts 4 and 5 of her complaint, Plaintiff asserts violations of her rights under the Family and Medical Leave Act (FMLA). In Count 4, Plaintiff alleges an interference claim and in Count 5 Plaintiff alleges a retaliation claim.

The FMLA benefits are available only to "eligible employees" who work for an "employer," as those terms are defined by the statute. *Tilley v. Kalamazoo Road Comm'n*, 777 F.3d 303, 310 (6th Cir. 2015). To be an eligible employee, the individual must have worked at least 1,250 hours for the specific employer in the previous 12-month period. 29 U.S.C. § 2611(2)(A); *Davis v. Michigan Bell Tel. Co.*, 543 F.3d 345, 347 (6th Cir. 2008).

Plaintiff cannot obtain any relief under FMLA. Plaintiff sought a leave of absence in January 2019. Whelan understood Plaintiff's request was related to her pregnancy. (ECF No. 32-1 Whelan Dep. at 35 PageID.122.) When Plaintiff requested the leave, she had not worked the required 1,250 hours for the previous 12-month period. For the 12 months in 2018, Plaintiff worked 1,120.94 hours. (ECF No. 32-5 Payroll Summary PageID.156.) And, for the month of January 2019, Plaintiff worked another 65.18 hours. (*Id.* PageID.155.) For that total period, Plaintiff worked approximately 1,186 hours, less than the 1,250 hours required to be an eligible employee.[1] The "eligible employee" requirement applies to all FMLA claims. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

---

[1] The records submitted by Defendants do not provide information about the hours worked per week. Obviously, the hours Plaintiff worked in January 2019 occurred early in the month before she requested leave. The Court will interpret the records for Plaintiff's benefit and assumes that all of the hours worked in January 2018 occurred at the end of that month and would fall within the 12-month period.

Plaintiff requests the Court not consider the records on which Defendants rely, arguing that the documents have not been authenticated and are not admissible. Rule 56(c)(2) permits a party to object to a fact that "cannot be presented in a form that would be admissible in evidence." Plaintiff's objection does not meet this standard. Plaintiff objects to the current form of the evidence. Plaintiff does not contend that the facts could not be presented in a form and manner that would be admissible at trial. *See, e.g., Mangum v. Repp*, 674 F. App'x 531, 536-37 (6th Cir. 2017) (commenting that "it would not be a gross miscarriage of justice to decline to address the merits of the parties' objections" and explaining that "Defendants do not object that plaintiff's evidence 'cannot be presented in a form that would be admissible in evidence.'"). Furthermore, "Rule 56 no longer draws a distinction between authenticated and unauthenticated evidence for the purposes of summary judgment." *Id.* at 537.

Plaintiff has not created a genuine issue of a material fact on the number of hours she worked. In an affidavit attached to her response, Plaintiff avers that during the year before her termination she "worked full time," she "regularly worked over 30 hours in a week," and at the time of her request "I believe I worked at least 1,250 hours." (ECF No. 36-4 Pl. Aff. PageID.213.) Working full time and working over 30 hours a week could put an employee over 1,250 hours for the previous 12-month period. Plaintiff, however, does not make any assertions about how many weeks she worked during that previous 12-month period. At her deposition, she admitted that she did not keep track of her hours. (ECF No. 32-3 Pl. Dep. at 74 PageID.140.) Plaintiff's "belief," which is set forth in the affidavit, does comply with Rule 56(c)(4) and is not sufficient to create a genuine issue of material fact. *See, e.g., Ondo*

*v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015).  Thus, the assertions in Plaintiff's affidavit are not inconsistent with the evidence presented by Defendants about the hours Plaintiff worked in the previous 12-month period and do not create a genuine issue of material fact.

Plaintiff also argues that Defendants should be estopped from disputing her eligibility under FMLA.  Under certain circumstances, an employer may be estopped from raising non-eligibility as a defense to FMLA claims.  *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009).  To establish equitable estoppel for FMLA eligibility, a plaintiff must show (1) a definite misrepresentation as to a material fact, (2) a reasonable reliance on the misrepresentation, and (3) resulting detriment to the plaintiff.  *Id.* at 557; *Tilley*, 777 F.3d at 311.

Plaintiff has not established either of the first two elements for equitable estoppel.  For the second element, Plaintiff has not established that her decision to take leave depended on her eligibility under FMLA.  For the first element, Plaintiff has not identified any "definite" misrepresentation.  Plaintiff has not identified any statement or similar acknowledgment made by Defendant that Plaintiff was eligible for FMLA leave.  *See Davis*, 543 F.3d at 353 (noting that "the defendant never made any forward-looking promises with respect to Davis's FMLA eligibility"); *Goode v. Heritage Hospice*, 4:10-342, 2012 WL 1038669, at *3-*4 (E.D. Ky. Mar. 26, 2012) (reviewing Sixth Circuit authority and that equitable estoppel requires an employer to "make specific affirmative representations to employees regarding specific requests for relief").  Several district courts in unpublished opinions have explained why an employer's omission, the failure to inform an employee that

he or she was not eligible, is not sufficient: that situation would "impermissibly broaden the FMLA eligibility requirements." *Ouellette v. Fountainview of Monroe*, No. 11-13082, 2013 WL 5423084, at *8 n.1 (E.D. Mich. Sept. 26, 2013); see *Stearns v. M&M Cartage Co., Inc.*, No. 3:16cv661, 2019 WL 4580050, at *6 n.9 (W.D. Ky. Sept. 20, 2019) (rejecting the argument that an employer who does not provide timely notice of FMLA ineligibility prohibits the employer from later challenging that employee's eligibility); *Russell v. BBG Production Techs., Inc.*, No. 3:07-0260, 2007 WL 2402730, at *6 (M.D. Tenn. Aug. 20, 2007) (rejecting the conclusion that silence or omission can constitute a misrepresentation for equitable estoppel without "some evidence [to] justify an inference that the silence was sufficiently misleading to amount to bad faith.") (citations omitted).

Defendants are entitled to summary judgment on Plaintiff's FMLA claims.

### III.

Counts 1, 2 and 3 arise under Michigan's Elliott Larsen Civil Rights Act (ELCRA). When a federal court exercises subject-matter jurisdiction over a complaint on the basis of a federal question, supplemental state law claims are resolved by applying the law of the forum state. See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1996).

#### A. Sexual Harassment Quid Pro Quo

In Count 1, Plaintiff contends Defendant Whelan made sexual advances towards her and that her failure to submit to those advances affected her employment. The Michigan Supreme Court describes quid pro quo sexual harassment under ELCRA as requiring a plaintiff to show (1) she was subject to the types of unwelcome sexual conduct or communication described in the statute and (2) that her employer or the employer's agent

used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000).

Defendants argue that Plaintiff has no evidence that Whelan's sexual advances were unwelcome. Defendants also argue that Plaintiff has no evidence that she was reprimanded or terminated because she rejected Whelan's sexual advances. On these two elements, Plaintiff's testimony at her deposition creates a genuine issue of material fact. Plaintiff testified that "[a]fter I stopped buying in to sexual advances and conversations was when I realized I was getting different sections, less tables, more time in the office being swore at." (ECF No. 32-3 Pl. Dep. at 63 PageID.139.) From this passage, a trier of fact can infer that (1) Whelan made sexual advances (a fact Defendants do not contest); (2) the advances were not welcome because Plaintiff did not reciprocate; and (3) as a result of the rejection, Whelan made work assignments that adversely affected Plaintiff. While Plaintiff acknowledged that she did not resist a particular kiss from Whelan, she testified that after that kiss she "went home. I backed away. I was uncomfortable and I went home." (*Id.* at 66 PageID.132.)

Defendants are not entitled to summary judgment on Plaintiff's ELCRA quid pro quo claim.

B.

In Count 2, Plaintiff alleges, at work, she was subjected to conduct and communication of a sexual nature that was unwelcome and was objectively and subjectively offensive. She also alleges the conduct and communication interfered with her employment. She asserts that she reported the problem to her supervisor, Whelan, who failed to take prompt remedial action.

For a hostile work claim under ELCRA, Plaintiff must prove (1) she belonged to a protected group, (2) she was subjected to communication or conduct on the basis of sex, (3) she was subjected to unwelcome sexual conduct or communication, (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. *Chambers*, 614 N.W.2d at 915; *Downey v. Charlevoix Cty. Bd. of Road Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998). Courts consider the combination of the third and fourth elements from the perspective a reasonable person: whether, under the totality of the circumstances, a reasonable person would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect or creating an intimidating, hostile, or offensive employment environment. *Quinto v. Cross and Peters Co.*, 547 N.W.2d 314, 320 (Mich. 1996) (citation omitted).

The conduct or communication must be severe and pervasive. *Amini v. Rite Aid Corp.*, 819 F. App'x 344, 347 (6th Cir. 2020). Courts should consider the (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or merely an offensive utterance, and (4) whether it unreasonably interferes with the employee's work performance. *Id.* at 348 (citation omitted). Generally, teasing and offhand comments, including the "sporadic use of abusive language [and] gender-related jokes" do "not amount to discriminatory changes in the terms or conditions of employment." *Ault v. Oberlin Coll.*, 620 F. App'x 395, 400 (6th Cir. 2015). "Isolated incidents may constitute discriminatory changes only if 'extremely serious.'" *Id.*

Defendants challenge the severity and pervasiveness of the sexual conduct and communication. Defendants contend that Plaintiff's evidence does not demonstrate a hostile environment from the perspective of a reasonable person.

The Court agrees with Defendants that the conduct was not sufficiently severe and pervasive. Plaintiff worked at the restaurant for approximately 17 months, September 2017 through January 2019.[2] The Sixth Circuit has

> established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory. Occasional offensive utterances do not raise to the level required to create a hostile work environment because, to hold otherwise would risk changing Title VII into a code of workplace civility. For example, in the context of alleged racial discrimination, this court has determined that even offensive and bigoted conduct is insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements.

*Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482-83 (6th Cir. 2020) (cleaned up and quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 327 and 328 (6th Cir. 2017)).[3] The Court has carefully considered Plaintiff's evidence. She testified that a male employee "a few times touched my butt." (ECF No. 36-1 Pl. Dep. at 57 PageID.193.) That employee also would grab his crotch in front of Plaintiff. (*Id.*) Plaintiff testified that her supervisor called her a "crazy pregnant bitch." (*Id.* at 58 PageID.194.) And, that supervisor also kissed Plaintiff. Such conduct is not acceptable. Such sporadic conduct over 17 months is also not actionable. *See, e.g., Clay*

---

[2] According to exhibits submitted by Defendants, Plaintiff started working in August or September 2017. (ECF Nos. 32-2 Whalen Aff. PageID.123; ECF No. 32-5 PageID.155-57.)

[3] Michigan courts look to Title VII caselaw for guidance when interpreting ELCRA because ELCRA is modeled after Title VII. *White v. Dep't of Transportation*, —N.W.2d—, 2020 WL 5849754, at * 6 (Mich. Ct. App. Oct. 1, 2020).

*v. United Parcel Serv., Inc.*, 501 F.3d 695, 707-08 (6th Cir. 2007) (concluding that 15 specific incidents spanning a 2-year period were not sufficiently pervasive).

Plaintiff's other evidence does not alter this conclusion. Plaintiff submitted an affidavit from another female employee who averred that she experienced frequent unwelcome and sexually inappropriate behavior. (ECF No. 36-3 Goodreau Aff. PageID.210.) While that employee might have experienced pervasive harassment, her affidavit does not establish that Plaintiff experience pervasive harassment.

The Court will dismiss Plaintiff's ELCRA hostile work environment claim.

C.

In Count 3, Plaintiff alleges retaliation under ELCRA. In the complaint, she claims she engaged in protected activity by objecting to the sexual harassment she endured. As a result of her complaints, Plaintiff alleges she suffered from retaliation, including unfavorable working assignments and eventual termination.

For ELCRA employment retaliation claims, when a plaintiff relies on circumstantial evidence, rather than direct evidence, courts analyze a summary judgment motion against the claim through the *McDonnell Douglas* burden-shifting scheme. *Jackson v. Genesee Cty. Road Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021); *see DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 837-38 (Mich. 2001). Under the scheme, after a plaintiff establishes a *prima facie* case, the defendant bears the burden of persuasion to show some legitimate, non-discriminatory reason for its action. *Jackson*, 999 F.3d at 344. After the defendant makes its showing, the plaintiff must produce evidence to show that the proffered reason is mere pretext for discrimination. *Id.*

A *prima facie* claim for employment retaliation requires a plaintiff to demonstrate (1) she was engage in a protected activity, (2) defendant was aware of the protected activity, (3) the defendant took action that was materially adverse to the plaintiff, and (4) a causal connection between the protected activity and the adverse action. *Jackson*, 999 F.3d at 343-44.

Defendants challenge Plaintiff's ability to make a *prima facie* case. In a perfunctory manner, Defendants argue the record contains no evidence that Plaintiff engaged in a protected activity and also that any causal connection between protected activity and her termination is conjecture and speculation. (PageID.112.) Defendants also contend that Plaintiff was terminated for legitimate, non-discriminatory reasons. Here, Defendants rely on an affidavit from Whalen. He avers that Plaintiff was terminated for poor performance: (1) she would roll her eyes at customers, (2) she had a bad attitude towards customers and other staff, (3) she had multiple instances of misconduct in the workplace, and (4) while Plaintiff was on leave multiple customers asked to be seated in any section except for Plaintiff's section. (ECF No. 32-2 PageID.123.)

In the portion of her response addressing the ELCRA retaliation claim, Plaintiff refers the Court to the portion of her response to the FMLA retaliation claim. (PageID.180.)

Plaintiff has put forth sufficient evidence to establish a *prima facie* retaliation claim, a burden that "is not onerous" and is "easily met." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (citations omitted). Plaintiff was engaged in protected activity when

she requested and then took leave.[4] *See* Mich. Comp. Laws § 37.2202(c) (discrimination on the basis of sex with respect to a privilege of employment) and (d) (discriminating against employees affected by pregnancy or a related medical condition). She was terminated when she requested to come back. For her *prima facie* case, the temporal proximity of the termination following the protected activity supports an inference of causation. *See Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009) ("Causation can be proven indirectly through circumstantial evidence such as suspicious timing.").

Defendants have put forth sufficient evidence to meet their burden of persuasion. Whelan testified that enough customers complained about Plaintiff and asked not to be seated in the area where she was working.

Plaintiff has not undermined Defendants' explanation for the adverse action. Plaintiff argues that the explanation fails because Whalen did not make the decision to terminate her until she informed him that she wanted to return. But, the complaints came to Whalen's attention after Plaintiff started her leave of absence. Plaintiff's reasoning overlooks the fact that she was on leave, was not reporting to work, and Whalen had no reason to terminate her (or even speak with her) until she asked to return.

The Court denies Plaintiff's request that the Court "strike" Whalen's affidavit. Plaintiff perfunctorily asserts, without any explanation, that the affidavit contains of statements that are contradictory and hearsay. Plaintiff, however, fails to identify any contradictory statements or hearsay statements. The affidavit may well contain such

---

[4] In the portions of her response addressing her retaliation claims, Plaintiff does not argue that her complaints about harassment constitute protected activity.

statements. But, the Court will not guess which statements Plaintiff believes are contradictory and which statements Plaintiff believes are hearsay. Parties must not announce their position without explanation and then hope that the Court will carefully scrutinize the record to find some basis that would support the argument.

The Court will dismiss Plaintiff's ELCRA retaliation claim.

## IV.

The Court finds that Defendants have established a basis for summary judgment and dismissal of Plaintiff's FMLA claims and Plaintiff's ELCRA hostile work environment claim and her ELCRA retaliation claim. For the FMLA claims, Plaintiff is not an eligible employee because she did not work enough hours in the preceding 12-month period. For her hostile work environment claim, Plaintiff's evidence does not establish a genuine issue of material fact that the alleged harassing conduct was severe and pervasive. For her retaliation claim, Plaintiff's evidence does not establish a genuine issue of material fact that the nondiscriminatory reason for her termination was mere pretext for discrimination.

## ORDER

Consistent with the accompanying Opinion, the Court **GRANTS IN PART** Defendants' motion for summary judgment. (ECF No. 31.) The Court dismisses Plaintiff's FMLA claims and Plaintiff's ELCRA claims for a hostile work environment and for retaliation. The Court denies Defendants' motion for Plaintiff's ELCRA sexual harassment quid pro quo claim. **IT IS SO ORDERED.**

Date:  September 29, 2021          /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge